IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ASTRID GONZALEZ, Individually, and | § | |
| as representative of the Estate of Ernesto | § | |
| Gonzalez, deceased, and on behalf of | § | |
| minor children, N.M.G, I.N.G., K.F.G., | § | |
| E.H.G and E.M.G | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| VS | § | C.A. NO. _____ |
| | § | |
| THE CITY OF SAN BENITO, TEXAS, | § | |
| CHIEF MICHAEL GALVAN, SERGEANT | § | |
| ELOY MARTINEZ AND OFFICER | § | |
| MANUEL CISNEROS | § | |
| *Defendants* | | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT & DEMAND FOR JURY

---

Respectfully submitted,

**LAW OFFICE OF EDDIE LUCIO**


*/s/ Eddie Lucio*
Eddie Lucio
Federal Id. No. 22009
State Bar No. 00791145
834 E. Tyler St.
Brownsville, Texas
(956) 546-9400
(956) 750-8807 Facsimile
elucio@luciolaw.com

**ATTORNEY FOR PLAINTIFF**

## TABLE OF CONTENTS

Nature of the Case………………………………………………………………….......3

Jurisdiction……………………………………………………………………….......4

Venue……………………………………………………………………………..……5

Parties ……………………………………………………………………………......5

Factual Allegations………………………………………………………..……...............7

Claims for Relief……………………………………………………………….......13

      Violations of 42 U.S.C. § 1983 ………………………………………………13
          a.  Qualified Immunity Under § 1983…………………………........……19
          b.  Municipal Policy………………………………………………21
          c.  Acts of Final Policy Makers…………………………………21
      Wrongful Death Cause of Action…………………………………………22
      Survival Cause of Action…………………………………………………23

Damages………………………………………………………………..................23

Attorneys' Fees and Costs ……………………………………………...……..........24

Punitive Damages……………………………………………………………..............24

Jury Trial Requested…..…………………………………………………………24

Request for Injunctive and/or Declaratory Relief.......................................................24

Prayer…………………………………………………………………………..…...25

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Astrid Gonzalez, Individually and as representative of the estate of Ernesto Gonzalez, deceased, and on behalf of her minor children, N.M.G, I.N.G., K.F.G., E.H.G and E.M.G, Plaintiff in the above-styled and numbered civil action, files her Original Complaint against The City of San Benito, Texas, Chief Michael Galvan, Sergeant Eloy Martinez and Officer Manuel Cisneros as for cause of action would show the Court and Jury the following:

## I. NATURE OF CASE

1.01    This is an action for Constitutional violations and state law personal injuries suffered by Decedent, Ernesto Gonzalez, as a result of the unreasonable treatment, conditions, and care while incarcerated at Defendant San Benito's City Jail (hereinafter the "City Jail").  Plaintiff brings this action for compensatory damages under 42 U.S.C. § 1983 because Defendants jointly and severally deprived decedent of his federally-protected right to be free from unlawful seizure, cruel and unusual punishment and because they denied him due process of law.  U.S. CONST. amends. IV, VIII and XIV.

1.02    As a direct result of the policies, practices, customs and procedures of the City Jail, decedent was deprived of his constitutional rights as guaranteed to him by the Amendments to the United States Constitution.  Defendant Michael Galvan, and Defendant Martinez are policy makers within the City Jail.  The City's officers and jailers acting in the course and scope of their employment with The City, and acting under color of state law, unjustifiably failed to monitor and medically treat the decedent until he died.  Said actions were taken under circumstances where no reasonable officer and/or jailer would have done so.  Under long established law on unlawful seizure, cruel and unusual punishment and due process, the individual Defendants are not entitled to qualified or other immunity for these actions.

1.03    The unconstitutional and tortious acts of the individual defendant and its officers were not isolated incidents.  Rather these acts were consistent with a custom, pattern and practice of the City Jail of failing to properly train and supervise its officers and jailers in these critical care taking responsibilities and failing to respond to decedent's screams for help.

1.04.    Thus, beyond compensating Plaintiff for her continuing injuries, this action seeks to redress the unlawful municipal customs, policies, patterns and practices pursuant to which defendants, acting under color of law both independently and in concert, violated decedent's clearly established rights as guaranteed by the Fourth, Eighth and Fourteenth Amendment to the United States Constitution.

1.05    As a result of the defendants 'tortious and unconstitutional conduct, Plaintiff seeks relief for the defendants' violation of decedent's rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and of the rights secured under the laws of the State of Texas.  Plaintiff seeks damages, compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys fees, and for such other and further relief as this court deems equitable and just.

## II.  JURISDICTION

2.01    This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and the Fourth, Eighth and Fourteenth Amendment to the United States Constitution and pursuant to the common law of the State of Texas.  Jurisdiction is conferred upon by this Court by 28 U.S.C. §§ 1331, 1332 and 1343.

2.02    Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas and seeks recovery under the Wrongful Death and Survival Statutes of the State of Texas as allowed by law.

2.03    The amount in controversy exceeds $75,000 exclusive of interest and costs.

### III. VENUE

3.01    Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) because the acts, events or omissions giving rise to this claim occurred in Cameron County, Texas, which falls within the United District Court for the Southern District of Texas, Brownsville Division.

### IV. PARTIES

4.01    Plaintiff, Astrid Gonzalez is the wife of the deceased's and mother of the deceased's minor children and is and was at all times material to this complaint, a citizen of the United States and resident of the State of Texas.

4.02    N. M.G. is the minor child of the decedent.

4.03    I. N. G. is the minor child of the decedent.

4.04    K. F. G. is the minor child of the decedent

4.05    E. H. G. is the minor child of the decedent

4.06    E. M. G. is the minor child of the decedent

4.07    Defendant San Benito (herein "the City") is a municipality in the State of Texas which funds and operates the San Benito City Jail (herein "the City Jail"). The City is responsible for the formulation and implementation of certain policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The City is also responsible for ensuring that all of its facilities, including the City Jail, are in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care. The City is the employer of certain Defendant police officers and is responsible for the training and supervision of such Defendant police officers. At all relevant times alleged herein, the City was acting under the color of state law and by and through its agents or employees, who were also

acting under the color of state law and within the course and scope of their agency or employment. Said agents and employees were required to observe, watch over, and manage persons placed in custody within the San Benito City Jail.  The City may be served by serving its City Secretary, Ruth McGinnis, City of San Benito Municipal Building, 401 North Sam Houston Boulevard, San Benito, Texas 78586.

4.08    Defendant, Chief Michael Galvan, (herein "Chief Galvan") is a resident of Cameron County, Texas and the Police Chief of the San Benito Police Department.  At all relevant times alleged herein, Chief Galvan, was acting under the color of state law and in the course and scope of his agency and/or employment relationship with the San Benito Police Department and pursuant to the San Benito Police Department's customs, policies, and practices which were the moving force behind the constitutional violations asserted herein.  He is sued in his individual capacity.  Defendant may be served at 601 North Oscar Williams Road, San Benito, Texas 78586.

4.09    Defendant, Sergeant Eloy Martinez, (herein "Sgt. Martinez") is a resident of Cameron County, Texas and a law enforcement officer with the San Benito Police Department.  At all relevant times alleged herein, Sgt. Martinez, was acting under the color of state law and in the course and scope of his agency and/or employment relationship with the San Benito Police Department and pursuant to the San Benito Police Department's customs, policies, and practices which were the moving force behind the constitutional violations asserted herein. He is sued in his individual capacity. Defendant may be served at 601 North Oscar Williams Road, San Benito, Texas 78586.

4.10    Defendant, Officer Manuel Cisneros, (herein "Officer Cisneros") is a resident of Cameron County, Texas.  At all relevant times alleged herein, Officer Cisneros, was acting under

the color of state law and in the course and scope of his agency and/or employment relationship with the San Benito Police Department and pursuant to the San Benito Police Department's customs, policies, and practices which were the moving force behind the constitutional violations asserted herein.  He is sued in his individual capacity.  Defendant may be served at 601 North Oscar Williams Road, San Benito, Texas 78586.

## V.  FACTUAL ALLEGATIONS

5.01    Ernesto Gonzalez ("decedent") was a husband and father to 5 children at the time of his untimely death at the age of 34.  He was well-liked by his friends and loved dearly by his entire family.  His widow, Astrid Gonzalez, is mother to his 1 year old baby boy, E.M.G., his 4 year old girl, E.H.G, his 5 year old girl, K.F.G, his 6 year old boy, I.N.G., and his 7 year old son, N.M.G.  Ernesto spent precious time with all his kids and loved all of them.

5.02    On or about November 22, 2019, decedent was arrested by the San Benito Police Department for the misdemeanor offense of Theft.  Decedent was transported by the San Benito Police Department to the San Benito City Jail located at 601 North Oscar Williams Rd., San Benito, Texas.

5.03    It is believed that Ernesto displayed unusual and/or erratic behavior during his transport to the City Jail which should have indicated that Ernesto required medical and/or psychological attention and/or was a danger to himself or others.

5.04    Once inside the San Benito City Jail, decedent may have undergone some type of alcohol and/or drug screening as well as physical and/or mental health screening.  It is believed that the individuals involved in said screenings were not properly trained and/or qualified to conduct the screenings.

5.05    It is believed that decedent was placed in solitary confinement due to his erratic and/or unusual behavior.

5.06    At all times relevant hereto, personnel and officers at the City Jail were required to keep decedent safe and free from psychological injury or harm.

5.07    At all times relevant hereto, personnel and officers at the City Jail were required and obligated (and knew of this requirement) to physically and visually check on detainees such as Ernesto who indicated or they had reason to believe was in an unstable emotional state.

5.08    At all times relevant hereto, there were cameras throughout the City Jail some of which were directed at decedent's jail cell.

5.09    At all times relevant hereto, personnel and officers at the City Jail were required and obligated (and knew of this requirement) to visually check the cameras directed at the cells such as those which housed decedent.

5.10    Despite their knowledge of their duties to physically and via camera monitor decedent, Defendants failed to meet either of these requirements.

5.11    The City Jail placed Ernesto in a jail cell with inappropriate items for a jail cell including cloth material and exposed beams. While in his cell, decedent continued to ask for help.  He requested medicines and medical attention. Nothing was provided to him. Decedent further requested a phone call so he could advise family that he needed help.  His request for a phone call was denied.

5.12    On November 23, 2019, Decedent hung himself with his shirt from a rail inside his cell.

5.13    Decedent was pronounced dead on November 23, 2019.

5.14    Following an autopsy, Cameron County medical examiner Elizabeth J. Miller, concluded that Decedent's cause of death was asphyxia by hanging.

5.15     At all times relevant hereto, the City Jail was required to train its jail personnel on the method and means of evaluating persons placed in custody to keep them safe from physical or psychological injury, harm or death.

5.16     Personnel and officers at the City Jail, including individual defendants Mendoza and Cisneros, failed to timely and appropriately administer CPR and other lifesaving treatment.

5.17     Personnel and officers at the City Jail, including individual defendants Mendoza and Cisneros, failed to timely transport Ernesto for the administration of lifesaving medical treatment.

5.18     At all times relevant hereto, the City Jail was required, but failed to comply, with the following:

    a. Having an established procedure for documented, face-to-face observation of all inmates by jailers no less than once every 60 minutes and at least every 30 minutes in areas or situations where inmates may be potentially suicidal – (closed circuit television may not be used in lieu of required personal observation);

    b. Assigning hash tags which identify inmates as having special mental health and or medical needs in the inmate's medical records and bringing this to the attention of health personnel and/or the supervisor on duty;

    c. Developing and implementing a suicide prevention plan which addresses the following principles and procedures:

        i. Provisions for staff training (including frequency and duration) on the procedures for recognition, supervision, documentation, and handling of inmates who are mentally disabled, experiencing withdrawals and/or potentially suicidal –

supplemental training should be provided to those staff members responsible for intake screening;

ii. Procedure for intake screening to identify inmates who are known to be or observed to be mentally disabled, experiencing withdrawals and/or potentially suicidal and procedures for referrals to available mental health officials;

iii. Procedures for communication of information relating to inmates who are mentally disabled and/or potentially suicidal;

iv. Provisions for adequate supervision of inmates who are mentally disabled, experiencing withdrawals and/or potentially suicidal and procedures for documenting supervision; and

v. Procedures for staff intervention prior to the occurrence of a suicide and during the progress of a suicide attempt, or serious deterioration of mental condition.

d. Developing and implementing an objective classification plan that includes principles,procedures, instruments and explanations for classification assessments, housing assignments, reassessments and inmate needs.

5.19   During all relevant times, Defendants were aware of and responsible for complying with the aforementioned standards. Despite Defendants' knowledge of these duties and obligations, personnel, agents, and employees at the City Jail deliberately abdicated their responsibilities for the safety, security, and welfare of detainees and instead made a mockery of the so-called security rounds by failing to comply with the required timely physical and visual checks, and by knowing that the well-being of an individual could not possibly be determined through a procedure that ignored the required personal observations of the detainees.

5.20    During all relevant times, although Defendants knew that decedent displayed suicidal tendencies, that he should have been placed in a mental health high risk status, should have been provided medical care, and that he was exhibiting signs and symptoms of distress and hopelessness; they failed to provide him any medical treatment or even physically observe him for long periods.

5.21    During all relevant times, despite Defendants' knowledge that decedent struggled with medical issues, including having attempted suicide, they were deliberately indifferent to his high risk of suicide.

5.22    During all relevant times, Defendants, with specific notice of decedent's ongoing medical issues, specifically including his risk of suicide, failed to offer or procure appropriate intervention and failed to ensure that he received the medical attention he needed for his serious, immediate and life threatening condition.

5.23    Defendants, the City Jail, Chief Galvan, Sgt. Martinez, and Officer Cisneros, are liable for their official policies and practices that failed to adequately train Defendant officers and jailers and failed to ensure they were knowledgeable and skilled in official policies, procedures and techniques relating to the humane housing and treatment of detainees as well as the provision of necessary medical care.

5.24    Further, the City Jail's detention policies and ordinances failed to provide for the proper supervision from the commencement of the process of placing decedent in its jail cell to the failing to provide prompt and necessary medical attention. This failure to supervise and/or train includes a failure to discipline and/or to intervene and stop its officers from continuing their unconstitutional course of actions. Plaintiff alleges that these policies and practices of the City

Jail were unconstitutional on their face. In these failings, Defendants violated the Constitutional rights of decedent and Plaintiff.

5.25    At all times relevant hereto, personnel at the City Jail were required to keep decedent safe and free from physical injury, harm, or death.

5.26    At all times relevant hereto, personnel at the City Jail were required to keep decedent safe and free from psychological injury or harm.

5.27    All times relevant hereto, personnel at the City Jail were required to screen and evaluate detainees placed in custody to determine if they pose a risk to themselves or others.

5.28    At all times relevant, personnel at the City Jail were required to screen and evaluate the physical and mental status of persons placed in its jail cells to determine if safety precautions are necessary.

5.29    At all times relevant hereto, the City Jail was required to train its jail personnel on the method and means of evaluating persons placed in custody to keep them safe from physical or psychological injury, harm, or death and transport them to a hospital when necessary.

5.30    Ultimately the training of all jail staff is the responsibility of the City and Chief Galvan. The training provided by Defendants is so inadequate as to constitute a failure to train. Members of the jail staff are not instructed on how to address deteriorating psychological and mental health conditions.  Moreover, the officers responsible for monitoring detainees are not trained on how and when to monitor said detainees. While jail staff will undoubtedly acknowledge that they are not equipped to deal with inmates having psychotic and/or emotional episodes, they are also not trained to assess such episodes and seek medical treatment. Ernesto should have been transported to a hospital or MHMR, where physicians and mental health providers could have treated him. At the very least, Ernesto and other detainees should've been monitored periodically

to ensure their safety.   Instead, he was allowed to hang himself while cameras recorded the whole incident. This improper or inadequate training is deliberately indifferent to the medical needs of inmates such as Ernesto and was a direct cause of his death.

## VI.  CLAIMS FOR RELIEF

### 1.  VIOLATIONS OF 42 U.S.C. SEC. 1983

6.01    Plaintiff hereby adopts, incorporates, restates and re-alleges the above paragraphs inclusive, with regard to all causes of action.

6.02    The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

6.03    The elements of a cause of action under § 1983 against a governmental entity are:

a. Plaintiff is deprived of rights under the United States Constitution;

b. Such deprivation is caused by a person acting under color of state law;

c. The governmental entity adopted, or failed to adopt, a policy statement, ordinance, regulation or decision adopted and promulgated by the governmental entity's lawmaking officers or by an official to whom the law makers delegate law-making authority or a persistent, widespread practice of officials or employees of the governmental entity which, though not authorized or officially adopted and promulgated, the policy is so common and well settled as to constitute a custom that fairly represents policy of the governmental entity; and

d. The governmental entity was deliberately indifferent to the party's constitutional rights.

6.04    Facts supporting each of the elements of a § 1983 claim listed above are found in the

Factual Allegations applicable to all claims, but may be summarized as follows:

    a.  The City and its employees implemented policies providing for, or acts supporting, the promulgated policy of unmonitored detainment of persons regardless of whether their medical, mental and/or physical condition required supervision and/or hospitalization;

    b.  The City and its employees failed to properly train, hire, control, discipline and supervise employees;

    c.  The City and its employees failed to establish and maintain a proper detention policy for people requiring monitoring and/or medical attention;

    d.  The City and its employees failed to establish and maintain a proper policy for addressing the mental and/or physical health of arrestees/detainees;

    e.  The City and its employees failed to establish and maintain proper policies for assurance of medical care from proper medical professional(s) to arrestees/detainees;

    f. The City and its employees failed to establish and maintain proper policies for assurance of medical care of arrestees/detainees;

    g. The City and its employees failed to establish and maintain proper screens for arrestees/detainees in order to rule out other causes of behavior and/or symptoms, such as intoxication, withdrawal, head injuries, physical and/or mental health issues;

    h. The City and its employees failed to establish and maintain proper policies for checking previous medical history of arrestees/detainees when making medical decisions;

    i.  The City and its employees failed to establish and maintain proper policies for treating persons with unpredictable medical or mental conditions;

    j.  The City and its employees failed to design and establish an on-site medical services program to meet the medical and/or psychological needs of inmates (e.g., initial physical

assessments, ongoing evaluation and treatment of serious medical conditions, and stabilization of urgent and emergency medical conditions.

k.   The City and its employees failed to operate its jail program using corrections experienced and professionally trained personnel.

l.   The City and its employees failed to implement a written medical services plan with clear objectives, policies, procedures so as to adequately guide its officers and jailers.

m.   The City and its employees implemented policies which failed to comply with the Texas Commission of Jail Standards, ACA, NCCHC, state and federal correctional medical standards.

n.   The City and its employees implemented policies creating a medical services service program which failed to provide medical services in a humane manner with respect to the inmates' rights to basic medical services.

o.   The City and its employees implemented policies which precluded and/or hampered the referral to an appropriate off-site medical provider/facility for emergency treatment.

p.   The City and its employees implemented a health assessment protocol which failed to include the following:

    i. A review of the intake screening results and the collection of additional data to complete the medical and mental health histories of inmates;

    ii. A complete and accurate recording of pulse, blood pressure, blood sugar levels and temperature;

    iii. A complete examination by a physician specialized in treatment of conditions and/or symptoms exhibited by inmates such as Ernesto;

iv. A review of the findings of the health assessment and tests, and identification of problems by a physician specialized in treatment of conditions and/or symptoms exhibited by inmates such as decedent; and

v. Initiation of therapy when appropriate;

q.   The City and its employees failed to establish detainee monitoring policies providing for the monitoring of detainees such as Ernesto.

r.   The City and its employees failed to establish policies which provided a pharmaceutical program in accordance with federal, state and local laws that met the needs of detainees such as Ernesto.

s.   The City and its employees failed to implement a mental health program which included screening, referral, diagnosis and treatment of mental health conditions and/or withdrawal.

t.   The City and its employees failed to establish a health care/medical care system which conformed to State standards for medical care and treatment as established by the Texas Jail Commission. Generally, health care at the Detention Facilities should be equivalent to that available in the community.

u.   The City and its employees promulgated, condoned or showed indifference to improper policies or customs; and

v.   The City and its employees continued such practices of improper policies or customs as to constitute custom representing policy.

6.05   These actions by the Defendants subjected decedent to confinement with constitutionally inadequate medical services, treatment and medication, such as:

a. Medical records that are inaccurate, incomplete, and not transmitted to the proper

medical professional in the City jail;

b. Confinement conditions that do not ensure safe, humane and decent conditions

including the monitoring of inmates;

c. Complete failure to assess ongoing medical or mental concerns;

d. The custom and practice of not monitoring those inmates believed to be acting erratic

rather providing medical treatment;

e. Staffing the jail with officers with no oversight or supervision by qualified medical

personnel in violation of State and Federal Jail standards; and

f. Requiring officers to make medical assessments of all inmates without proper

licensing, training or supervision.

6.06    The Individual Defendants, as applicable, intentionally, and with deliberate indifference,

deprived Ernesto of his clearly established federal constitutional rights, including, but not limited

to:

a. His right to reasonably safe conditions of confinement;

b. His right to receive proper medical services and medications for any serious medical

conditions; and

c. His right to be free from cruel and unusual punishment.

6.07    Each individual Defendant had a duty to ensure that decedent received proper medical

care, monitoring and supervision, yet failed to do so. The individual Defendant's actions were

more than negligent as decedent's continued incoherence, obvious medical and mental issues,

were obvious to the individual Defendants. Yet, each individual Defendant consciously chose not

to ensure that decedent received adequate medical and mental care.  Defendants, through these

actions, proximately caused the deprivation of Ernesto's rights to due process of law and rights to be free from unlawful seizure and cruel or unusual punishment subjecting him to periods of incarceration under unduly painful, horrifying, and dangerous conditions resulting in the death of Ernesto.   The actions of Defendants were singularly, or in combination, a legal cause of Ernesto's death.

6.08   Decedent was in serious need of attention and treatment, as was well known to the Defendants. Nonetheless, the Defendants willfully and maliciously placed and kept decedent incommunicado in the City Jail. The City and the Individual Defendants refused to summon adequate medical aid for Ernesto.

6.09   At all times material hereto, the Individual Defendants were employees of the City, and within the course and scope of their employment and in furtherance of the duties of their offices or employment.

6.10   The Defendants, acting under color of law and acting pursuant to the customs and policies of the City, deprived decedent of rights and privileges secured to him by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and by other laws of the United States, by failing to provide proper medical and/or psychological treatment and by failing to protect him and through deliberate indifference to his medical and psychological needs, in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the cited constitutional provisions.

6.11   Defendants, acting through official policies, practices, and customs and with deliberate, callous and conscious indifference to the constitutional rights of decedent, failed to implement any policies, procedures and practices necessary to provide constitutionally adequate medical and/or psychological services to decedent during his incarceration in the City jail and

implemented defacto policies, procedures and practices which actually interfered with or prevented decedent from receiving medical services and medication. Furthermore, the conditions complained of were not reasonably related to any legitimate governmental objective, as there is no legitimate governmental objective in failing to call in a medical doctor to assess an inmate, or monitor an inmate, or to transport an inmate to receive medical services, or medical clearance.

6.12    Defendants clearly breached their constitutional duty to tend to basic human needs of persons within their charge, acting with deliberate indifference and subjective recklessness to the clear needs of decedent, of which they had subjective knowledge.   The individual Defendants had full knowledge of decedent's medical and/or psychological needs. However, the Individual Defendants made a conscious decision, pursuant to the policies, practices or customs of the City and/or their inadequate training to not monitor decedent and to leave him there without providing him the necessary care and attention as required under the United States Constitution. Given decedent's repeated symptoms and actions while in the City Jail, the City and the Individual Defendants deliberately disregarded the serious risk of medical harm. Further, the City and the Individual Defendants failed to take the requisite steps to determine the true cause of Ernesto's symptoms and actions.

**a.  Qualified Immunity Under § 1983**

6.13    City employees can be entitled to qualified immunity to their individual liability but this immunity is waived if the complainant shows that:

      a. the individual's acts deprived the party of constitutional rights under color of law

      b. the deprived rights were clearly established and constitutional rights which existed at

      the time of the acts; and

c. such acts were not objectively reasonable under the circumstances, that is, no

reasonable official could have believed at the time that the conduct was lawful.

6.14   The Individual Defendants involved in this case, acting under color of law, were deliberately indifferent to the excessive risk to decedent's health and safety in their acts, or failures to act. Such acts violated and deprived decedent of his clearly established constitutional rights and were not objectively reasonable.

6.15   The acts of the City and the Individual Defendants clearly violated established statutory or constitutional rights of which a reasonable person would have known, including the constitutional rights of life and liberty, and against unlawful seizures and cruel and unusual punishment, afforded by the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

6.16   The acts of Defendants were so obviously and grossly wrong, that only a plainly incompetent entity or officer, or one who was knowingly violating the law, would have performed such acts, and therefore, Defendants are liable to Plaintiffs for the damages caused by their actions.

6.17   Plaintiffs have alleged acts or omissions sufficiently harmful to evidence deliberate indifference to the seriousness of the deceased's medical and/or psychological needs. Defendants denied Ernesto humane conditions of confinement knowing of and disregarding an excessive risk to his health or safety. The Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.  Here, the Defendants failed to act, despite their knowledge of a substantial risk of serious harm. In decedent's case, the Defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk.

6.18    The aforementioned acts resulted in the delay and ultimately failure to provide any of the necessary medical and/or psychological treatment to decedent, which in turn proximately caused his death.

**b.  Municipal Policy**

6.19    Municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality.  Even if the City Jail's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

6.20    In the present case, the City Jail's formal and informal actions in overlooking, hiding and/or tacitly encouraging misconduct constituted a policy, practice custom and procedure authorizing and allowing the inhumane treatment of Ernesto that violated the civil rights of Ernesto.  Consequently, the City is liable for harm caused to others, such as Plaintiff, as a result of its policies, practices customs and procedures.

6.21    The City's acts and omissions, when viewed objectively, involved an extreme degree of risk, considering the probability and magnitude of harm to others. The City had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others including decedent.

**c.  Acts by Final Policymakers**

6.22    Defendants, Chief Galvan, Sgt. Martinez were at all relevant times, final policymakers at the City Jail, with oversight responsibility over the officers and jailers present when during the inhumane treatment of decedent.  Defendants, the City Jail, Chief Galvan, Sgt. Martinez, and

Officer Cisneros had overall responsibility for the hiring, training, instruction, supervision and discipline of the officers and jailers.

6.23    Upon information and belief, there was a custom, policy, pattern and practice in the City Jail, by and through its final policy makers, beginning years before the inhumane treatment of decedent of condoning, encouraging, ratifying and acquiescing in the lack of care provided to detainees.

6.24    The City, by and through its final policymakers, failed to adequately train, supervise, and/or discipline officers and jailers concerning humane treatment and care of detainees.

6.25    By reason of the foregoing, this defendant acted with reckless disregard and deliberate indifference in the supervision, hiring, training, and discipline of the officers and jailers thereby causing the death of decedent.

6.26    As a direct and proximate result of said violations, decedent was allowed to hang himself while the City Jail merely recorded but failed to take any steps to prevent his death, and suffered the damages described herein.

### (2) WRONGFUL DEATH CAUSE OF ACTION

6.27    The above paragraphs are incorporated herein by reference for all purposes.

6.28    Plaintiff brings this wrongful death action against Defendants for the death of Ernesto, for her own damages and for the damages to the other statutory beneficiaries arising from the injuries, which resulted from Ernesto's death. Defendants are liable as the injuries were caused by their wrongful acts, neglect, carelessness, and by the wrongful act, neglect, and carelessness of their agents and employees as set forth above.

6.29    Plaintiff requests damages for the loss of consortium of the statutory beneficiaries resulting from the death of Ernesto; loss of advice, counsel, companionship, society and

affection; grief and mental anguish, bereavement and mental trauma, and emotional damages they suffered as a result of the death of Ernesto.

6.30    As a direct and proximate result of Defendants' acts, Defendants caused the deceased to suffer injury and death, of which has caused the general damages requested by Plaintiff in an amount in excess of the applicable jurisdictional amount, to be proven at trial.

6.31    The claims and causes of action for the wrongful death of the deceased are brought by Plaintiff and on behalf of all rightful heirs, pursuant to Texas Civil Practice and Remedies Code sections 71.002-004.

**(3)  SURVIVAL CAUSE OF ACTION**

6.32    The above paragraphs are incorporated herein by reference for all purposes.

6.33    As a direct and proximate result of the foregoing, Defendants caused the deceased to suffer injury and death, of which has caused the general damages requested by Plaintiff in an amount in excess of the applicable jurisdictional amount, to be proven at trial.

6.34    The claims and causes of action for injuries to the health and person sustained by the deceased prior to his death are brought in this action pursuant to the Survival Act, Texas Civil Practice and Remedies Code section 71.021.

**VII.  DAMAGES**

7.01    The above paragraphs are incorporated herein by reference for all purposes.

7.02    As a result of the acts and of Defendants as described above, Plaintiff and her minor children suffered severe injuries.  Plaintiff has sustained loss of earnings and loss of earning capacity, past and in the future.  Plaintiff and her children have experienced great mental anguish, and will in all reasonable probability, continue to do so in the future by reason of the nature and severity of her injuries.

## VIII.  ATTORNEYS' FEES

8.01    Plaintiff was required to hire an attorney to prosecute this claim.  Plaintiff hereby sues for attorney fees.

8.02    Pursuant to 42 U.S.C s 1988, Plaintiff requests this court award Plaintiff reasonable and necessary attorney's fees and expenses which Plaintiff has incurred and will continue to incur during all trial and appellate court proceedings.

## IX.  PUNITIVE DAMAGES

9.01    All of the acts committed by the Individual Defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, and/or recklessly, and said acts meet all of the standards for imposition of punitive damages.

## X.  JURY TRIAL REQUESTED

10.01   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury.

## XI. REQUEST FOR INJUNCTIVE AND/OR DECLARATORY RELIEF

11.01   Plaintiff's petition for an Order of this Court prohibiting the City Jail from continuing their current practice of failing to monitor detainees.

    a. Plaintiffs are likely to succeed on the merits as they can establish that Defendants did in fact have a pattern and practice of failing to train and/or failing to monitor detainees.

    b. The denial of a constitutional right, if established, constitutes irreparable harm for purposes of equitable jurisdiction. Here, Plaintiffs can establish that Ernesto was denied adequate care resulting in his death.

c. An injunction is in the public interest because the City's delivery of constitutionally inadequate medical care has already cost Ernesto his life. This constitutionally inadequate medical care continues to this day and unless enjoined, more citizens will be harmed.

11.02   Alternatively, Plaintiffs request the Court to issue a Declaratory Judgment that the care provided at the City Jail is constitutionally inadequate because:

a. Detainees are not properly supervised and/or monitored;

b. Untrained officers and jailers are providing comprehensive medical assessments, which is outside their scope of practice;

c. Officers and Jailers are providing medical and/or psychological care pursuant to doctor protocols which is a violation of Federal and/or State standards.

11.03   A Declaratory Judgment finding that the care and/or supervision is constitutionally inadequate as a matter of law is necessary and critical to the public interest

## XII.  PRAYER

12.01   **WHEREFORE**, Plaintiff respectfully prays that Defendants be duly cited to appear and answer herein, and that upon final trial of this cause, Plaintiff recover a judgment against Defendants for:

a.    Damages for past and future physical pain and suffering in the amount of $3,000,000;

b.    Damages for past and future mental pain and suffering in the amount of $3,000,000

c.    Damages for past and future lost earnings;

d.    Exemplary damages in the amount of $4,000,000;

e.      Prejudgment interest and post-judgment interest at the highest rates permitted by law;

f.      Reasonable attorneys' fees to the extent recoverable by law;

g.      All costs of court expended herein;

h.      All other relief, at law or in equity, to which Plaintiff may be justly entitled.

12.02   Plaintiff respectfully requests that Defendants be cited to appear and answer herein, and that Plaintiff have judgment against Defendants, jointly and severally, for actual damages above the jurisdictional minimum of the Court; and all other relief to which Plaintiff is justly entitled, at law or in equity.